FILED

2021 Jun-24  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **HILLARY LANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.:** |
| **v.** | ) | |
| | ) | |
| **GAYLOR ELECTRIC, INC.,** | ) | |
| | ) | **JURY DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Hillary Lane ("Ms. Lane" or "Plaintiff"), by and through her undersigned counsel, and files this Complaint against the Defendant, Gaylor Electric, Inc. ("Gaylor" or "Defendant"). As grounds for this Complaint, Plaintiff states the following:

### JURISDICTION AND VENUE

1.      This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et seq*., as amended by the "Civil Rights Act of 1991," ("Title VII") and 42 U.S.C. § 1981.

2.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

1

3.     The venue of this action is properly placed in the Northern District of Alabama pursuant to 28 U.S.C. § 1391 because Plaintiff's claims accrued in Madison County, Alabama.

## ADMINISTRATIVE EXHAUSTION

4.     Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on March 27, 2020. Charge No. 420-2020-01750 (the "Charge") alleged that Plaintiff was subjected to discrimination based on her sex, in violation of Title VII, and to retaliation for opposing unlawful conduct, in violation of the same. (See Exhibit A).

5.     Defendant failed to communicate with the EEOC at any point throughout the EEOC's investigative process.

6.     The EEOC found cause for discrimination on February 12, 2021, and invited the Parties to engage in conciliation efforts. (See Exhibit B). Such efforts were unsuccessful.

7.     The EEOC issued a Dismissal and Notice of Rights (the "RTS Notice") for the Charge on March 22, 2021.

8.     Plaintiff received the RTS Notice for the Charge on March 26, 2021. (See Exhibit C).

9.     This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS Notice.

10.     Plaintiff has thus exhausted all administrative remedies available prior to filing this Complaint.

## PARTIES

11.     Plaintiff is a citizen of the United States of America, who currently resides in Madison County, Alabama.

12.     Plaintiff is over the age of nineteen (19) years.

13.     Gaylor is an employer in the State of Alabama within the meaning of 42 U.S.C. § 2000e(b), in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under Title VII.

14.     During all times relevant to this Complaint, Defendant conducted business throughout Alabama, with a physical location in Madison County, Alabama, whose address is 3054 Leeman Ferry Road, Suite J, Huntsville, Alabama 35801.

15.     Defendant was Plaintiff's employer during all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

16.     Plaintiff is a Caucasian woman.

17.     On or about July 22, 2019, Defendant hired Plaintiff as a Journeyman Electrician at Defendant's Huntsville, Alabama location.

18.     Plaintiff is married to an African American male, who also worked for Defendant.

19.     At the time of her hire, Plaintiff reported to her supervisor and Foreman, Eric Whitley ("Mr. Whitley").

20.     Within Mr. Whitley's larger crew, Plaintiff was placed on a smaller crew. Plaintiff's smaller crew Lead was Oronde Gordon ("Mr. Gordon").

21.     Mr. Whitley met with his crew each morning to brief the workday's assignments.

22.     During these meetings, crew members signed in with their Foreman. Similarly, at the end of each day, crew members were required to sign out with their Foreman.

23.     Plaintiff was the only woman on Mr. Whitley's crew.

24.     Mr. Whitley treated Plaintiff differently than his male direct reports.

25.     Mr. Whitley was openly hostile towards Plaintiff, and made it very clear that he did not believe that women, and specifically Plaintiff, should be Electricians.

26.     During the morning meetings, Mr. Whitley would make discriminatory comments to Plaintiff based on her sex, in front of all the men on her crew.

27.     Mr. Whitley would say things like, "females should not be in this type of work."

28.     Mr. Whitley would also find Plaintiff throughout the day, while she was out working on an assignment, and make comments in front of her smaller crew, such as "this is why girls should not be here."

29.     These types of comments occurred approximately two (2) times a week.

30.     Mr. Whitley also threatened Plaintiff's job during morning meetings, and while she was out on assignment.

31.     Mr. Whitley would threaten Plaintiff in front of other men, stating things like, "if you cannot do the work I assign, I am going to lower your pay."

32.     Mr. Whitley's comments were empty threats because Plaintiff satisfactorily completed all her assigned Electrician duties, and he did not have the authority to lower her pay.

33.     Mr. Whitley would only make these comments if other men were around.

34.     These types of threats occurred approximately three (3) times a week.

35.     Mr. Whitley did not make these discriminatory comments or threats to any of the men on his crew.

36.     The following men on Plaintiff's crew witnessed Mr. Whitley's discriminatory comments: Mr. Gordon, Alonzo Page ("Mr. Page"); Shannon Youmans; and Thadeus Johnson.

37.     Upon information and belief, Mr. Whitley made these comments to demean and embarrass Plaintiff based on her sex, in the presence of other men.

38.     Upon information and belief, Mr. Whitley made a comment to Mr. Page about how "races should not mix", in direct reference to Plaintiff and her husband.

39.     Mr. Whitley's exclusivism towards Plaintiff made it difficult for her to do her job duties.

40.     Mr. Whitley made it plain that he did not want to work with Plaintiff because she is a woman and married to an African American male.

41.     Plaintiff felt ashamed, embarrassed, and degraded by Mr. Whitley's consistent belittlement of her despite her being well-qualified, female Electrician.

42.     In or around the first week of September 2019, Plaintiff reported Mr. Whitley's discriminatory actions to Defendant's Human Resources ("HR") Representative, Ryan Lab ("Mr. Lab").

43.     Plaintiff informed Mr. Lab that Mr. Whitley was discriminating against her based on her sex and race. Plaintiff informed Mr. Lab about the specific instances of Mr. Whitley singling her out in front of the men, based on her sex, both during morning meetings and throughout the day. Plaintiff also informed Mr. Lab that she was aware that Mr. Whitley discriminated against her because she was married to an African American.

44.    Mr. Lab responded by informing Plaintiff that she would be moved off Mr. Whitley's crew the very next day; that he would contact corporate; and that he would follow up with her after he contacted corporate.

45.    Mr. Lab did not move Plaintiff off Mr. Whitley's crew the following day, nor did he communicate with Plaintiff after allegedly contacting corporate.

46.    On September 7, 2019, Plaintiff sent Mr. Lab a text message inquiring about the status of her complaint, as she had not heard from him.

47.    Mr. Lab replied to Plaintiff, via text message, and stated, "I apologize. I have sent off an email to my team at corporate. They have the [information] and should eventually be contacting everyone."

48.    However, no one from "corporate" contacted Plaintiff regarding the internal complaint she made against Mr. Whitley.

49.    No one at Defendant's Huntsville location ever contacted Plaintiff regarding the internal complaint she made against Mr. Whitley.

50.    Mr. Lab did not contact Plaintiff with any additional information regarding Plaintiff's internal complaint against Mr. Whitley or his email to corporate.

51.    As it did not bother to respond to Plaintiff's EEOC Charge, or the EEOC's attempts to obtain a Position Statement setting out Defendant's positions in

this matter, Defendant failed to engage in any substantive investigatory or remedial action related to Plaintiff's report of discrimination.

52.     Defendant did not counsel, terminate, or otherwise, discipline Mr. Whitley.

53.     Rather, Defendant forced Plaintiff to continue reporting to Mr. Whitley.

54.     In mid-September of 2019, Plaintiff learned she was pregnant.

55.     Very shortly thereafter, Plaintiff informed Defendant's Safety Resources Officers that she was pregnant.

56.     Upon information and belief, Mr. Whitley heard Plaintiff inform Defendant's Safety Resource Officers that she was pregnant, as he was standing close by at the time she informed them.

57.     After learning of Plaintiff's report of discrimination, and her pregnancy, Mr. Whitley retaliated, and further discriminated, against Plaintiff.

58.     Mr. Whitley began assigning Plaintiff to grueling and unfavorable tasks, such as assignments that required excessively heavy lifting and working in the heat in ditches; he had not previously assigned these tasks to Plaintiff.

59.     Mr. Whitley also continued to make comments about Plaintiff's sex and threaten her job, despite her satisfactory performance.

60.     In or around late September 2019, Mr. Whitley assigned Plaintiff to a task known as Duct Banking, which consists of an Electrician working on a large PVC pipe in an open ditch.

61.     In late September 2019, Plaintiff passed out while Duct Banking.

62.     Plaintiff's crew witnessed the incident and called a Safety Officer to take Plaintiff to the nurse's station.

63.     After leaving the nurse's station, Defendant placed Plaintiff inside an office, alone, and required her to sit behind a desk all day. This change in responsibilities proved to continue through Plaintiff's termination.

64.     Defendant stripped Plaintiff of all her Electrician responsibilities; her new job was to sit alone, monitoring a room that employees occasionally used to fill out paperwork.

65.     Plaintiff asked Mr. Lab if she could return to her Electrician duties on another crew, as she was qualified to complete her job duties.

66.     Plaintiff was not restricted by her pregnancy in any way as it pertained to her duties as an Electrician.

67.     Despite this fact, Defendant refused to allow Plaintiff to return to her work as an Electrician, but still required Plaintiff to check in and out with Mr. Whitley in the mornings and evenings.

68.     This permitted Mr. Whitley the opportunity to continue making discriminatory comments toward Plaintiff; he also began making retaliatory comments toward Plaintiff.

69.     To a group of men in Plaintiff's presence, Mr. Whitley stated, "see, this is what happens when you run your mouth."

70.     Furthermore, Mr. Whitley marked Plaintiff as late in the mornings, claiming that he did not see her at the meetings, despite her being there on time.

71.     Plainly, Mr. Whitley was punishing Plaintiff for raising her complaint of sex discrimination.

72.     In or around October 2019, Defendant finally reassigned Plaintiff to another Foreman's crew, but continued to require her to sit at a desk.

73.     Notwithstanding the same, Mr. Whitely sought Plaintiff out and continued to retaliate against her.

74.     Upon information and belief, Defendant allows Foremen to subject their employees to random drug testing at any time, if they have reason to believe they may be using drugs.

75.     On two (2) separate occasions, in November and December 2019, Mr. Whitley personally came to retrieve Plaintiff from her desk and escort her to the drug testing center.

76.     Mr. Whitley was not Plaintiff's Foreman at either time he subjected her to random drug testing, and he had no legitimate reason to believe Plaintiff was using drugs.

77.     Mr. Whitley informed another Foreman, known as "Fish", that he was trying to get Plaintiff fired through a positive drug test.

78.     Plaintiff tested negative for drugs both times.

79.     Still, Defendant terminated Plaintiff on December 31, 2019.

80.     A Foreman by the name of Gerald, along with another employee, informed Plaintiff that she was being laid off as part of a Reduction in Force ("RIF").

81.     Other employees were laid off in the days prior to Plaintiff's termination, but they were given an opportunity to speak with Human Resources, and advocate for why they should keep their jobs.

82.     With this knowledge, Plaintiff asked if she could speak with Human Resources about her termination.

83.     Gerald refused, threatening to call the on-site police officer if Plaintiff went to Human Resources.

84.     Gerald then escorted Plaintiff out of the building.

85.     As a pretext for unlawfully terminating Plaintiff's employment in violation of Title VII and § 1981, Defendant purportedly terminated Plaintiff secondary to a RIF.

86.     The pretextual nature of Defendant's stated reason for Plaintiff's termination is evidenced by the fact that Defendant permitted other employees to advocate for, and, in some cases, keep their jobs, but utterly refused to afford Plaintiff the same opportunity.

87.     Upon information and belief, Saude Moody ("Mr. Moody") and Mr. Page, both Electricians, were included the RIF, but were subsequently permitted to keep their jobs after talking to HR.

88.     These two (2) men were in all material respects similarly situated to Plaintiff.

89.      Despite their similar positions, qualifications, managers, and being subject to the same company policies, Plaintiff was not afforded the same opportunity, and permanently lost her job because of it.

## COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII

90.     Plaintiff re-alleges and incorporates by reference paragraphs four (4) through ten (10); sixteen (16) through thirty-seven (37); thirty-nine (39) through fifty-three (53); fifty-seven (57) through eighty-nine (89) above with the same force and effect as if fully set out in specific detail herein below.

91.     Plaintiff is a woman and a member of a protected class.

92.     Plaintiff was, and is, a qualified employee, able to perform her job duties.

93.    Mr. Whitley made discriminatory comments to Plaintiff, based on her sex, in front of other men on her crew, like: "females should not be in this type of work" and "girls should not be here."

94.    Mr. Whitley threatened Plaintiff's job in front of the other men, telling her that if she could not complete the work then he would lower her pay.

95.    Notwithstanding the baseless threats, Plaintiff satisfactorily completed her Electrician job duties throughout her employment.

96.    Mr. Whitley's discriminatory comments and behavior embarrassed Plaintiff and made her feel shameful about her qualifications as a female Electrician.

97.    In or around the first week of September 2019, Plaintiff informed Mr. Lab in HR that Mr. Whitley was discriminating against her based on her sex.

98.    Defendant ignored Plaintiff's concerns and refused to move Plaintiff to off Mr. Whitley's crew.

99.    Mr. Whitley continued to treat Plaintiff less favorably than similarly situated men by making discriminatory comments; threatening her job; harassing her; and giving her unfavorable job assignments.

100.    On December 31, 2019, Defendant terminated Plaintiff's employment.

101.    Defendant allegedly terminated Plaintiff's employment as part of a RIF.

102.   However, at least two (2) similarly situated Electricians, outside of Plaintiff's protected class, who were also included in the RIF, were able to immediately return to their jobs.

103.   Defendant did not afford Plaintiff the same opportunity, despite her materially similar position and qualifications.

104.   Defendant's decision to terminate Plaintiff was motivated by her sex.

105.   As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT II: PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

106.   Plaintiff re-alleges and incorporates by reference paragraphs four (4) through ten (10); sixteen (16) through thirty-seven (37); thirty-nine (39) through eighty-nine (89) above with the same force and effect as if fully set out in specific detail herein below.

107.   Plaintiff is a woman and a member of a protected class.

108.   Plaintiff was, and is, a qualified employee, able to perform her job duties.

109.   In or around mid-September 2019, Plaintiff learned that she was pregnant.

110.   In or around mid-September 2019, Plaintiff informed Defendant of her pregnancy.

111.   Upon information and belief, Mr. Whitley became aware of Plaintiff's pregnancy at that time.

112.   After learning of Plaintiff's pregnancy, Mr. Whitley began assigning Plaintiff grueling tasks that included heavy lifting outside in the heat.

113.   Mr. Whitley had not usually assigned Plaintiff those tasks prior to learning of her pregnancy.

114.   In October 2019, Plaintiff passed out while working on one (1) of these grueling assignments.

115.   Although Plaintiff was okay after going to the nurse's office, Defendant indefinitely assigned her to a desk job by herself.

116.   Plaintiff repeatedly asked to be put back on an electrical crew, under a different Foreman, but Defendant refused.

117.   Plaintiff was qualified to resume her Electrician duties.

118.   Plaintiff's pregnancy in no way prohibited her from resuming her Electrician duties.

119.   Despite the same, Defendant kept Plaintiff at the desk job until it terminated her employment on December 31, 2019.

120.   Defendant allegedly terminated Plaintiff's employment as part of a RIF.

15

121.   However, at least two (2) similarly situated men, outside of Plaintiff's protected class, who were included in the RIF, were able to get their jobs back immediately.

122.   Defendant did not afford Plaintiff the same opportunity as these men, despite the material similarities between their positions and qualifications.

123.   Defendant's decision to terminate Plaintiff was motivated by her pregnancy.

124.   As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

125.   Plaintiff re-alleges and incorporates by reference paragraphs four (4) through ten (10); sixteen (16) through fifty-three (53); and fifty-seven (57) through eighty-nine (89) above with the same force and effect as if fully set out in specific detail herein below.

126.   Plaintiff is Caucasian and a member of a protected class.

127.   Plaintiff was, and is, a qualified employee, able to perform her job duties.

128.   Mr. Whitley, also Caucasian, did not approve of Plaintiff's inter-racial marriage with her husband, who is African American and worked for Defendant.

16

129.   Mr. Whitley made a discriminatory comment in front of Mr. Page, in reference to Plaintiff and her husband, that "races should not mix."

130.   Mr. Whitley displayed hostility towards Plaintiff by treating her differently than other members of her crew, who were not in inter-racial marriages.

131.   Mr. Whitley's discriminatory comments and behavior embarrassed Plaintiff and made her feel shameful about her marriage.

132.   In or around the first week of September 2019, Plaintiff informed Mr. Lab in HR that Mr. Whitley was discriminating against her based on her race because he did not approve of her inter-racial marriage with her husband.

133.   Defendant ignored Plaintiff's concerns and refused to move Plaintiff off Mr. Whitley's crew.

134.   Mr. Whitley continued to treat Plaintiff less favorably than similarly situated employees, outside of her protected class, by making discriminatory comments to and about Plaintiff; threatening her job; and giving her less favorable job assignments, including a desk job.

135.   On December 31, 2019, Defendant terminated Plaintiff's employment as part of an alleged RIF.

136.   However, at least two (2) similarly situated employees, not in an inter-racial marriage, who were included in the RIF, were able to immediately get their jobs back.

137.   Defendant did not afford Plaintiff the same opportunity.

138.   Defendant's decision to terminate Plaintiff was motivated by her race.

139.   As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VII

140.   Plaintiff re-alleges and incorporates by reference paragraphs four (4) through ten (10); sixteen (16) through thirty-seven (37); thirty-nine (39) through fifty-three (53); fifty-seven (57) through eighty-nine (89) above with the same force and effect as if fully set out in specific detail herein below.

141.   Plaintiff engaged in protected activity, in or around the first week of September 2019, when Plaintiff reported Mr. Whitley's discriminatory conduct to Mr. Lab in HR.

142.   Plaintiff reported Mr. Whitley's discriminatory comments and conduct, and believed, in good faith at the time, that the same constituted discrimination based on her sex, in violation of Title VII.

143.   A reasonable third person would have believed Mr. Whitley's comments and conduct constituted unlawful sex discrimination.

144.   After Plaintiff engaged in protected activity, Defendant retaliated against her, by, among other things, terminating her employment.

145.   Prior to terminating Plaintiff, Mr. Whitley continued to discriminate against Plaintiff; Mr. Whitley began assigning her grueling tasks; and Defendant indefinitely stripped Plaintiff of her Electrician duties and placed her behind a desk.

146.   Mr. Whitley commented on her protected activity by stating, "see, this is what happens when you run your mouth."

147.   Defendant ultimately terminated Plaintiff's employment on or about December 31, 2019, citing a RIF.

148.   Defendant's stated reason for terminating Plaintiff's employment is pretext for its real, retaliatory reason for termination, as it did not apply the terms and conditions of the RIF evenhandedly.

149.   Defendant permitted others who had not engaged in protected activity, but who were similarly situated to Plaintiff in all material respects, to get their jobs back after being subjected to the RIF.

150.   Defendant did not afford Plaintiff the same opportunity.

151.   Defendant terminated Plaintiff's employment because she opposed unlawful conduct.

152.   As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

153.    Plaintiff re-alleges and incorporates by reference paragraphs four (4) through ten (10); sixteen (16) through fifty-three (53); and fifty-seven (57) through eighty-nine (89) above with the same force and effect as if fully set out in specific detail herein below.

154.    Plaintiff engaged in protected activity, in or around the first week of September 2019, when Plaintiff reported Mr. Whitley's discriminatory comments, made on the basis of Plaintiff's race, to Mr. Lab in HR.

155.    Plaintiff reported Mr. Whitley's comment that he did not believe "races should mix", and believed, in good faith, at the time that the same constituted discrimination based on her race, in violation of 42 U.S.C. § 1981.

156.    A reasonable third person would have believed Mr. Whitley's comments constituted unlawful race discrimination under the circumstances, as Plaintiff, a Caucasian woman, is married to an African American man. Mr. Whitley was aware of the same.

157.    After Plaintiff engaged in protected activity, Defendant retaliated against her, by, among other things, terminating her employment.

158.    Prior to terminating Plaintiff, Mr. Whitley continued to discriminate and retaliate against Plaintiff; Mr. Whitley began assigning her grueling tasks; and

Defendant indefinitely stripped Plaintiff of her Electrician duties and placed her behind a desk.

159.     Mr. Whitley commented on her protected activity by stating, "see, this is what happens when you run your mouth."

160.     Defendant ultimately terminated Plaintiff's employment on or about December 31, 2019, citing a RIF.

161.     Defendant's stated reason for terminating Plaintiff's employment is pretext for its real, retaliatory reason for termination as it did not apply the terms and conditions of the RIF evenhandedly.

162.     Defendant permitted others who had not engaged in protected activity, but who were similarly situated to Plaintiff in all material respects, to get their jobs back after being subjected to the RIF. Defendant did not afford Plaintiff the same opportunity.

163.     Defendant terminated Plaintiff's employment because she opposed unlawful conduct.

164.     As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also causes Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendant for wage damages, compensatory damages, punitive damages,

consequential damages, incidental damages, the costs of this action, interest, attorney's fees, and any other, further, and different relief to which she may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

*s/ Courtney B. Crampton*
Joshua A. Wrady (ASB-9617-J68W)
Courtney B. Crampton (ASB-3685-J61X)
*Attorneys for Plaintiff*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Joshua@wmalabamalaw.com
Courtney@wmalabamalaw.com
Tel:   (205) 980-5704
Fax:   (205) 994-2819

**DEFENDANT TO BE SERVED BY PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Gaylor Electric, Inc.
c/o r/a CORPORATION SERVICE COMPANY INC.
641 South Lawrence Street
Montgomery, Alabama 36104

*s/ Courtney B. Crampton*
Attorney for Plaintiff